UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANDREW NASCARELLA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-10878-IT |
| | * | |
| FRANK G. COUSINS, JR., et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

March 27, 2015

TALWANI, D.J.

I.      Introduction

        This case involves allegations that two correctional officers violated a prisoner's rights

under federal and state law by using excessive force against him while he was incarcerated at a

county facility and that other defendants failed to properly train, supervise, and discipline these

officers.  Plaintiff Andrew Nascarella ("Nascarella") brings claims against Correctional Officer

Patrick Marks ("Officer Marks"); Correctional Officer Travis Mustone ("Officer Mustone"); the

Superintendent of the Essex County Correctional Facility, Michael Marks ("Superintendent

Marks"); the Sheriff of Essex County, Frank J. Cousins ("Sheriff Cousins"); and the

Commonwealth of Massachusetts.[1]  Currently before the court is Defendants' Motion for

Summary Judgment [#54], which seeks an entry of final judgment in favor of all Defendants on

all claims.  With some exceptions detailed below, this motion is DENIED as to Officer Mustone,

_____

[1] The Defendants are sued in their individual capacities.  See Compl. ¶ 12.  Claims against the
prison's healthcare provider and the treating nurse were voluntarily dismissed with prejudice.
See Stipulation Dismissal [#61]; Stipulation Dismissal [#63].

Officer Marks, Superintendent Marks, and the Commonwealth, but ALLOWED as to Sheriff Cousins.

II.    <u>Factual Background</u>

In deciding this motion for summary judgment, the court properly construes the facts in the light most favorable to Nascarella, the nonmovant.  <u>See, e.g.</u>, <u>Prescott v. Higgins</u>, 538 F.3d 32, 39 (1st Cir. 2008).

    *A.    The Events of July 3, 2012*

The following facts are undisputed.

On July 3, 2012, Nascarella was housed in the segregation unit at the Essex County Correctional Facility ("the Facility").  Defs.' Statement Undisputed Material Fact ¶¶ 1-2 [#56] [hereinafter Defs.' Facts]; Pl.'s Resp. Defs.' Statement Undisputed Material Facts & Pl.'s Statement Additional Material Facts ¶¶ 1-2 [#70] [hereinafter Pl.'s Facts].  During the unit's scheduled recreation time, Nascarella was in a common area with other inmates.  Defs.' Facts ¶ 3; Pl.'s Facts ¶ 3.  When recreation time ended, Officer Mustone ordered the inmates to return to their cells.  Defs.' Facts ¶ 4; Pl.'s Facts ¶ 4.  Nascarella failed to follow this order.  Defs.' Facts ¶ 5; Pl.'s Facts ¶ 5.

The parties dispute what occurred next.

According to Nascarella, after the prisoners were ordered to return to their cells, he asked Officer Mustone—as he had several times before—to speak to a lieutenant about certain personal property that had been lost when he transferred units.  Pl.'s Facts ¶¶ 18-19, 21.  Officer Mustone reacted angrily, "storm[ing] towards" Nascarella aggressively.  <u>Id.</u> ¶ 22.  Upon reaching Nascarella, who was standing in the common area with his arms handcuffed in front of his body,

Officer Mustone grabbed Nascarella and threw him to the ground. Id. ¶¶ 20, 23-25. Nascarella had not behaved aggressively or otherwise provoked this attack. Id. ¶¶ 23-24.

After hitting the ground, Nascarella immediately felt extreme pain in his back, curled into a fetal position, and yelled out that he was injured. Id. ¶¶ 29, 38. While he lay dormant on the ground, Officer Mustone and Officer Marks—who had joined Officer Mustone—struck Nascarella repeatedly with their knees, including several strikes by Officer Mustone to Nascarella's already-injured back. Id. ¶¶ 31-34. Nascarella pled for Officer Marks and Officer Mustone to stop, exclaiming that he was hurt and that his eye had been injured by their blows. Id. ¶ 35. In response, Officer Mustone proclaimed "No, now your eye's fucked up" before punching Nascarella in the face. Id. Throughout this attack, Nascarella never resisted Officer Mustone and Officer Marks or attempted to attack them. Id. ¶¶ 37-38.[2]

B.    *Resulting Injuries*

Nascarella was treated at a local hospital, where he was diagnosed with: (1) an "[a]cute minor head injury without signs of intracranial bleed or fracture"; (2) a nasal fracture; (3) a 3.5 cm long laceration over his right eyebrow; (4) multiple facial contusions; (5) a cervical strain; and (6) "a mild acute anterior compression fracture" in his upper back. Pl.'s Facts, Ex. N at 5-6. (Nascarella's medical records). While hospitalized, Nascarella met with a psychologist and was diagnosed with anxiety. Id. ¶ 57, Ex. S at 4, 6. The psychologist's report stated that Nascarella "was fearful that he would be killed if he returned to his sending institution" and that he "was

---

[2] Nascarella submitted a video recording of this incident with his opposition to summary judgment. See Pl.'s Facts at Ex A. The video does not include sound and does not resolve certain disputed facts. For example, because Nascarella's back is to the camera when he is on the ground, the video does not show whether Nascarella resisted the officers or attempted to attack them while on the ground. Nonetheless, the video's contents are generally consistent with Nascarella's version of events.

unable to form any type of safety plan related to how he could function in the institution" given his fear. <u>Id.</u> Ex. S at 6.

        *C.*      *Training, Supervision, and Discipline at the Facility*

Nascarella provides the following evidence regarding the Facility's use-of-force training and supervision of correctional officers. Except where otherwise noted, Defendants do not dispute these facts.

        *1.*      *Training*

According to Nascarella, Sheriff Cousins has the ultimate responsibility to ensure correctional officers are properly trained. <u>Id.</u> ¶ 75, Ex. J Cousins Dep. 47:18-48:3. Sheriff Cousins admits, however, that he has not reviewed the Facility's use-of-force training or read the Facility's training and staff development policy. <u>Id.</u> ¶ 80; Ex. J Cousins Dep. 27:8-28:19. Sheriff Cousins states that the responsibility to oversee the training program at the Facility rests with Superintendent Marks. <u>Id.</u> ¶¶ 76, 80, Ex. J Cousins Dep. 27:12-13 ("That's Superintendent Marks' job, the training department."). Superintendent Marks admits that he does not normally review the content of training modules. <u>Id.</u> ¶ 81, Ex. K Marks Dep. 10:1-7. Moreover, Defendants assert that neither Sheriff Cousins nor Superintendent Marks has any involvement in the actual training of correctional officers at the Facility. Defs.' Facts ¶ 15.

Superintendent Marks has never identified a correctional officer in need of more use-of-force training and has never asked to review use-of-force training module. Pl.'s Facts ¶¶ 82-83, Ex. K Marks Dep. 10:19-21, 27:12-15. In 2011, Department of Correction auditors cited the Facility for non-compliance with a state regulation requiring that the Superintendent receive quarterly reports from the Facility's Advisory Training Council. <u>Id.</u> ¶ 79, Ex. BB (citing 103

C.M.R. 915.01(5)).  Despite being on notice of this non-compliance, Superintendent Marks

cannot recall ever receiving such a report.  Id. ¶ 79, Ex. K Marks Dep. 31:7-32:15.

 Correctional officers at the Facility receive use-of-force training in the form of an online

module, with an in-person "practical" held every other year.  Id. ¶ 90, Ex. X Ebacher Dep. 18:3-

23.  When deposed, both Defendant Officers struggled to identify different methods intended to

"take down" a resistant prisoner with minimally necessary force.  Id. ¶¶ 100-01, 104, Ex. C

Mustone Dep. 33:23-35:14, Ex. G Patrick Marks Dep. 26:15-29:14.  Another correctional officer

stated that he had never heard the term "de-escalation tactic."  Id. ¶ 103, Ex. D Smolski Dep.

41:19-23.  The Director of Training and a training instructor at the Facility also struggled to

clearly explain de-escalation tactics.  Id. ¶¶ 93-94, 97; Ex. I Mansur Dep. 69:11-15, Ex. X

Ebacher Dep. 46:1-10, 49:2-5.

  2. *Supervision of Use of Force*

 In July 2010, Department of Correction auditors expressed concerns relating to a "use-of-

force-package"[3] at the Facility.  Id. ¶ 109, Ex. AA.  The auditors found the package, which

related to use of a canine against an inmate, to be non-compliant with state regulations governing

the use of force in correctional facilities, see 103 C.M.R. 924.09, based on the following failures:

(1) the form did not correctly denote the type of force used, (2) not all staff members listed as

having been involved filed incident reports, (3) a majority of the incident reports completed were

"less than accurate," (4) there was no documentation of medical treatment, and (5) "the potential

threat toward staff or the facility did not support" the unauthorized use of a canine.  Id. ¶ 109,

Ex. AA.

---

[3] This terminology is used by the parties to describe the compilation of reports prepared by each
officer involved in an incident involving the use of force against an inmate.  See 103 C.M.R.
924.09 (Massachusetts regulation concerning reporting on uses of force in county correctional
facilities).

The auditors further stated that "none of the issues noted had been identified" during an internal review of the use-of-force package and consequently recommended that the Facility assess its internal review process. Id. Ex. AA. Superintendent Marks responded by letter, in which he acknowledged that he is "responsible for the administration of the Use of Force Policy" at the Facility, took "responsibility for the inaccurate documentation," and indicated that he would take steps to improve his review process. Id. ¶ 111, Ex. AA. When deposed, however, Superintendent Marks stated that the Department of Correction "never had concern about content of a use of force packet." Id. ¶ 108, Ex. K Marks Dep. 15:12-18.

From 2010 to 2012, Officer Mustone and Officer Marks reported using force a combined total of forty-seven times: Officer Mustone twenty-three times, Officer Marks sixteen times, and the two officers together eight times. Id. ¶ 62, Ex. V. Eleven of these forty-seven uses of force involved a "take down" of a prisoner, where the prisoner was knocked down to the ground or onto a flat surface. Id. ¶ 64, Ex. V. Nine of the eleven "take downs" occurred during incidents involving only a single prisoner, not in response to a prisoner-on-prisoner fight. Id. ¶ 65, Ex. V. Department of Correction auditors have told Superintendent Marks that the Facility has a high number of use-of-force incidents. Id. ¶ 136, Ex. K Marks Dep. 15:15-22. Nascarella's expert also states that the rate of Officer Mustone and Officer Marks' use of force, even at a high-security facility, should cause an attentive supervisor reviewing such reports "great alarm." Id. ¶ 63, Ex. H at 24.

Sometime in late May 2012 the Salem District Court forwarded to the Facility a letter it had received from a prisoner, William Morris ("Morris"), complaining of having been kicked and punched in the face by Officer Mustone and Officer Marks. Pl.'s Facts ¶¶ 66-68, Ex. L. Morris separately complained about this incident to a lieutenant on May 24, 2012. Id. ¶¶ 67-68,

Ex. L.  Officer Mustone's report regarding this incident, which was included in the related use-of-force package, understated Morris' injuries.  Compare id. ¶ 71, Ex. L at 7 (Officer Mustone's report that Morris sustained "a small cut over his left eye"), with id. ¶¶ 72-73, Ex. L at 10, 15 (reports by another responding officer and medical provider describing multiple facial contusions or lacerations).  Officer Marks' report did not mention that Morris sustained any injuries.  See id. Ex. L at 9.[4]

Although the record is not express on this point, a reasonable inference can be drawn that Superintendent Marks reviewed Officer Mustone and Officer Marks' reports regarding use of force against Morris, as Superintendent Marks acknowledges that review of all use-of-force packages at the Facility is his responsibility.  See id. ¶ 107, Ex. K Marks Dep. 9:14-18.  There is no indication in the record that Superintendent Marks noted these reporting discrepancies or undertook to verify the nature of Morris' injuries.  The Facility's Internal Affairs Division dismissed Morris' complaint after reviewing only his disciplinary record.  Id. ¶¶ 69, 74, Ex. L. The involved officers were not interviewed and the allegation of excessive force was not otherwise investigated.  Id.

Superintendent Marks reviewed Officer Mustone and Officer Marks' use of force against Nascarella and determined it to be justified.  See Defs.' Facts ¶ 16.  In conducting his review, Superintendent Marks did not interview the involved officers, document the scene, or inquire if photographs of Nascarella's injuries were available.  Id. ¶¶ 111-15.  Superintendent Marks also failed to notice that some reports in the use-of-force package misrepresented Nascarella's injuries, reporting only a single cut above his eye and a neck injury, id. ¶ 116, Ex. K Marks Dep.

---

[4] Nascarella states that Officer Marks did not file a report.  See Pl.'s Facts ¶ 62.  An incident report completed by Officer Marks on May 23, 2012, and related to this incident, however, is included in Nascarella's exhibits.  See id. Ex. L.

62:2-10, and that no report from Officer Marks was included in the use-of-force package, see id. ¶ 119; Ex. K Marks Dep. 73:3-74:6.

Superintendent Marks does not track uses of force to determine if there is a pattern. Id. ¶¶ 131, 133-34, 139; Ex. K Marks Dep. 35:9-14. Sheriff Cousins has ultimate responsibility for ensuring the safety of prisoners at the Facility, id. ¶ 61, Ex. U, but he also does not monitor use of force at the Facility or review use-of-force packages, even when a prisoner files a complaint. Id. ¶¶ 122, 130, Ex. J Cousins Dep. 7:22-8:15, 45:9-19.

III.    Discussion

In resolving a motion for summary judgment, the court takes all properly supported evidence in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). In so doing, the court properly "give[s] no heed to speculative, unsupported, or unreasonable conclusions." Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61, 69 (1st Cir. 2014).

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if an issue "could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). Facts are material if they have "the potential of affecting the outcome of the case." Id.

A.    *Claims Against Officer Mustone and Officer Marks*

1.    *Excessive Force in Violation of the Eighth Amendment and Article 26*

Count One of Nascarella's complaint alleges a violation of his Eighth Amendment right to be free from excessive force against Officer Marks and Officer Mustone. Count Two alleges a parallel claim under Article 26 of the Massachusetts Declaration of Rights. In support of

summary judgment on Counts One and Two, Defendants argue that: (1) the force used against

Nascarella was a reasonable measure to ensure officer safety, and (2) Officer Mustone and

Officer Marks are protected by qualified immunity.

The Massachusetts Supreme Judicial Court has ruled that Article 26's prohibition on

cruel and unusual punishment is "at least as broad as the Eighth Amendment." <u>Good v. Comm'r

of Correction</u>, 629 N.E.2d 1321, 1325 (Mass. 1994). Moreover, Nascarella has made no

argument in support of interpreting Article 26 more broadly in the context of excessive force

claims. Accordingly, the court treats Counts One and Two under governing federal-law

standards.

*a.*     *Reasonableness of Force*

In evaluating whether an officer's use of force against a prisoner amounts to a violation

of the Eighth Amendment,[5] the court asks "whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v.

McMillian</u>, 503 U.S. 1, 7 (1992). The court may consider "the need for application of force, the

relationship between the need and the amount of force used, the threat 'reasonably perceived by

the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"

<u>Id.</u> (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986)). Although not dispositive of whether

a constitutional violation occurred, the court may also consider the severity of any resulting

---

[5] Nascarella brought his Eighth Amendment claim under 42 U.S.C. § 1983, which requires "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of the rights secured by the Constitution or laws of the United States." <u>Collins v. Nuzzo</u>, 244 F.3d 246, 250 (1st Cir. 2001) (internal quotation marks and citation omitted). Because Defendants do not dispute that Officer Mustone and Officer Marks acted under color of state law, the court treats only the second requirement.

injuries as evidence tending to show whether or not "'the use of force could plausibly have been thought necessary.'" Id. (quoting Whitley, 475 U.S. at 321).

Taking the evidence in the light most favorable to Nascarella, he was knocked to the floor by Officer Mustone when he asked to speak to a lieutenant. Once on the ground, he was repeatedly struck in the back and face by Officer Mustone and Officer Marks despite being handcuffed, lying still, and exclaiming that he was injured. On these facts, a jury could find that the nature and extent of force used was not an effort to ensure safety and security, but instead a malicious attempt to cause harm. Accordingly, the record shows a genuine dispute of material fact as to whether the officers used excessive force in violation of the Eighth Amendment.

### b.    *Qualified Immunity*

The court uses a three-step test to determine if officers are eligible for qualified immunity: "(1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right." Wilson v. City of Bos., 421 F.3d 45, 52 (1st Cir. 2005) (citations omitted). Viewing the evidence in the light most favorable to Nascarella and applying this test, the court finds that Officer Mustone and Officer Marks are not eligible for qualified immunity on summary judgment.

First, as stated above, a jury could reasonably find that Officer Mustone and Officer Marks used force not to "maintain or restore discipline," but rather maliciously and with the intent to cause harm. Hudson, 503 U.S. at 7. This would amount to a violation of the Eighth Amendment. See Hope v. Pelzer, 536 U.S. 730, 736 (2002) ("The threshold inquiry a court must

undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation.").

Second, the Eighth Amendment's proscription on excessive force was clearly established at the time of the incident. A "law is clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct." Jennings v. Jones, 499 F.3d 2, 16 (1st Cir. 2007) (internal quotation marks and alteration omitted) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997)). Courts may consider "not only Supreme Court precedent, but all available case law." Suboh v. Dist. Attorney's Office of Suffolk Dist., 298 F.3d 81, 93 (1st Cir. 2002).

Eighth Amendment precedent predating July 3, 2012, clearly prohibits the unjustified use of force against prisoners. See, e.g., Whitley, 475 U.S. at 327; Hudson, 503 U.S. at 9-10. Moreover, substantially similar facts have been held to constitute violations of the Eighth Amendment's proscription of excessive force. See, e.g., Hudson, 503 U.S. at 4 (finding a violation where, after Hudson argued with an officer, one officer "punched Hudson in the mouth, eyes, chest, and stomach while [another officer] . . . kicked and punched him from behind."); Orwat v. Maloney, 360 F. Supp. 2d 146, 155 (D. Mass. 2005) (denying summary judgment where plaintiff alleged he was hit in the face, fracturing his jaw, in response to giving the officer the middle finger).

Third, crediting Nascarella's versions of the facts,[6] a reasonable officer would have known that, when a handcuffed prisoner verbally refuses to return to his cell, responding by

_____

[6] The question of objective reasonableness is one of law, see Wilson, 421 F.3d at 53 n.10, which should be "resolved, where possible, in advance of trial," Kelley v. LaForce, 288 F.3d 1, 7 (1st Cir. 2002). However, before the court may determine this question, "factual issues must be

throwing the prisoner to the ground and striking him repeatedly while he lay in a fetal position exclaiming that he was injured amounts to an unjustified use of force in violation of the Eighth Amendment. See, e.g., Hudson, 503 U.S. at 4 (finding that use of force in response to an earlier verbal altercation was unjustified).

Accordingly, the court DENIES summary judgment on Counts One and Two as pleaded against Officer Mustone and Officer Marks.

### 2. *Assault and Battery*

Count Five of Nascarella's complaint alleges that Officer Mustone and Officer Marks committed assault and battery. "An assault and battery is the intentional and unjustified use of force upon the person of another, however slight, or the intentional commission of a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another." Commonwealth v. Burno, 487 N.E.2d 1366, 1368-69 (Mass. 1986) (citations and internal quotation marks omitted). "A peace officer can be liable for committing an assault and battery if they use excessive force . . . in subduing a prisoner." Evicci v. Baker, 190 F. Supp. 2d 233, 239 (D. Mass. 2002).

Defendants argue that summary judgment is warranted on this claim because Officer Mustone and Officer Marks' use of force was justified as a means to make Nascarella return to his cell. See 103 C.M.R. 505.07 (allowing for use of reasonable force to "move an inmate who has refused a proper order by an employee"). For the reasons set forth above, if Nascarella's version of events is credited, a jury could find that such use of force was not reasonably justified as a means of moving Nascarella back to his cell.

---

decided by the trier of fact." Id. Accordingly, for the purposes of summary judgment, the court "first identif[ies] the version of events that best comports with the summary judgment standard, and then ask[s] whether, given that set of facts, a reasonable officer should have known that his actions were unlawful." Morelli v. Webster, 552 F.3d 12, 19 (1st Cir. 2009).

Accordingly, the court DENIES summary judgment on Count Five.

### 3. Intentional Infliction of Emotional Distress

Count Six of Nascarella's complaint alleges that Officer Mustone and Officer Marks' actions were intended to inflict emotional distress on Nascarella in violation of Massachusetts law. To prove a claim of intentional infliction of emotional distress, a party must show:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

Agis v. Howard Johnson Co., 355 N.E.2d 315, 218-19 (Mass. 1976) (citations and internal quotation marks omitted). Conduct "characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort" may still be insufficient to state a claim for intentional infliction of emotional distress. Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass. 1987).

Taking the evidence in the light most favorable to Nascarella, summary judgment on this claim is unwarranted. A jury could reasonably find that Officer Mustone and Officer Marks acted with intent to cause Nascarella fear and anxiety, thus ensuring that he would not make further demands on the officers or refuse a subsequent order to return to his cell.

As to Officer Mustone, a jury could find that knocking Nascarella to the ground; striking him repeatedly; and, in response to Nascarella's protestations that he was injured, proclaiming "No, now your eye is fucked up" before hitting him again constitutes outrageous conduct. See Barbosa v. Conlon, 962 F. Supp. 2d 316, 323-24, 334 (D. Mass. 2013) (denying summary judgment on intentional infliction of emotional distress claim given the extreme nature of

officers' physical contact with arrestees); <u>Johnson v. Town of Nantucket</u>, 550 F. Supp 2d 179, 183 (D. Mass. 2008) (concluding that a jury could find an officer's use of racial slurs against an arrestee and claim that he could arrest her without a warrant to be outrageous). Similarly, a jury could find that Officer Marks joining Officer Mustone in repeatedly striking Nascarella while he was lying on the ground, offering no resistance, and exclaiming that he was injured, constitutes outrageous behavior. <u>See</u> <u>Barbosa</u>, 962 F. Supp. 2d at 334.

Nascarella has also offered evidence showing that Officer Mustone and Officer Marks' actions caused him severe emotional distress. <u>See</u> Pl.'s Facts ¶ 57, Ex. S. Reports from Nascarella's treating psychologist during his hospitalization indicate that he repeatedly expressed fear that he would be killed or severely injured if he was returned to the Facility. A jury could find that Nascrella's fear, as well as the emotional effects of dealing with his physical injuries, was sufficiently severe to prove a claim of intentional infliction of emotional distress. <u>See</u> <u>Poy v. Boutselis</u>, 352 F.3d 479, 485-86 (1st Cir. 2003) (upholding jury verdict for infliction of emotional distress on the theory that "humiliation, long continued pain," and facial scar resulting from use of excessive force could cause severe emotional distress); <u>Chao v. Ballista</u>, 806 F. Supp. 2d 358, 380 (D. Mass. 2011) (acknowledging that abuse perpetrated by prison guards against inmates can "'destroy[] the security of a correctional facility'" and cause a feeling of "powerlessness").

Accordingly, the court DENIES summary judgment on Count Six as pleaded against Officer Mustone and Officer Marks.

### 4. *Massachusetts Civil Rights Act Claim*

Count Seven of Nascarella's complaint alleges that Officer Mustone and Officer Marks violated the Massachusetts Civil Rights Act, which prohibits "any person or persons, whether or

not acting under color of law, [to] interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth."  Mass. Gen. Laws ch. 12, § 11H.

"A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act."  Longval v. Comm'r of Correction, 535 N.E.2d 588, 593 (Mass. 1989); cf. Davis v. Rennie, 264 F.3d 86, 112 (1st Cir. 2001) (finding that holding inmate down so another officer could strike him could be a coercive act depriving inmate of his Eighth Amendment rights); Walker v. Jackson, No. 12-10267, 2014 WL 5500664, at *4 (D. Mass. Oct. 31, 2014) (finding that an officer's use of force to enter an apartment could be a coercive act depriving a defendant of his right to be free from warrantless search).

Defendants seek summary judgment on this claim on the ground that Officer Mustone and Officer Marks did not use coercion, threats, or intimidation to deprive Nascarella of his rights.  Nascarella does not oppose Defendants' motion.  Although Nascarella's complaint articulated the theory that Officer Mustone and Officer Marks' use of force was intended to coerce him into giving up his First Amendment right to complain about lost property,  see Compl. ¶ 84, he has since forgone that argument, and his papers in opposition to summary judgment articulate only a theory of direct deprivation of his rights.  Accordingly, in the absence of opposition, the court ALLOWS summary judgment on Count Seven.

### B.    Claims Against Superintendent Marks and Sheriff Cousins

#### 1.    Excessive Force in Violation of the Eighth Amendment and Article 26 (Failure to Train, Supervise, or Discipline)

Counts One and Two of Nascarella's complaint allege violations of the Eighth Amendment and Article 26, respectively, by Superintendent Marks and Sheriff Cousins based on

their failure to properly train, supervise, or discipline officers at the Facility. Defendants seek summary judgment on these claims, arguing that the record reveals no pattern of behavior sufficient to put the supervisory officers on notice of a likelihood that Officer Mustone and Officer Marks would use excessive force. Again, because Article 26 is at least coterminous with the Eighth Amendment, Good, 629 N.E.2d at 1325, and because Nascarella has made no argument that Article 26 should be interpreted more broadly as applied to the instant claims, the court reviews these claims under applicable federal-law standards.

Respondeat superior liability is unavailable for § 1983 claims. See Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). Where there is evidence of a constitutional violation, supervisory liability attaches only if the supervisory officials engaged in acts or omissions amounting to either "direct participation in the unconstitutional conduct, or . . . condonation or tacit authorization" of that conduct. Whitfield v. Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)).

A plaintiff must also show causation in the form of an "affirmative link" between the supervisory official's conduct and the violative conduct of his subordinate. See Camilo-Robles, 175 F.3d at 45. As the First Circuit has explained, this requires a "strong causal connection between the supervisor's conduct and the constitutional violation." Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014); see also Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011) ("[A] supervisor may not be held liable . . . unless there is an affirmative link . . . such that the supervisor's conduct led inexorably to the constitutional violation.").

"[A]ctual knowledge of censurable conduct" is not required, so long as the supervisor "would have known [of the conduct] but for his deliberate indifference or willful blindness." Maldonado-Denis, 23 F.3d at 582. "[A] sufficient casual nexus may be found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the [violative] conduct." Id. A plaintiff may also show causation through "a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." Ramírez-Lluveras, 759 F.3d at 20 (citation and internal quotation marks omitted); see also Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 49 (1st Cir. 1999). However, "isolated instances of unconstitutional activity ordinarily are insufficient" to establish supervisory liability. Maldonado-Denis, 23 F.3d at 582.

<em>a.   Failure to Train</em>

To sustain a claim for supervisory liability based on a failure to train, a plaintiff must show that an "identified deficiency in . . . training . . . [is] closely related to the ultimate injury." City of Canton v. Harris, 489 U.S. 378, 391 (1989). "Showing that a single individual received inadequate training is insufficient . . . ; the training program as a whole must be found faulty." Calvi v. Knox Cnty., 470 F.3d 422, 429 (1st Cir. 2006) (citing City of Canton, 489 U.S. at 390-91).

Nascarella does not allege that correctional officers at the facility did not receive use-of-force training. See Pl.'s Facts ¶ 90 (discussing online training). Rather, Nascarella relies on evidence that Officer Mustone and Officer Marks, as well as other correctional officers at the Facility, did not recognize or struggled to define common terminology related to use of force in correctional facilities, such as "de-escalation" or "take down." See Pl.'s Facts ¶¶ 97, 101-03.

Correctional officers' failure to learn or retain specific terminology regarding use-of-force and defensive tactics, without more, does not establish constitutionally inadequate training.

See Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 27 (1st Cir. 2005) ("[T]he fact

that training is imperfect or not in the precise form a plaintiff would prefer is insufficient.").[7]

Nascarella's evidence does not raise an inference that the correctional officers were not trained in

how to ascertain when force should be used and how to moderate that force when applied.

Connick v. Thompson, 131 S. Ct. 1350, 1363 (2011) ("[F]ailure-to-train liability is concerned

with the substance of the training, not the particular instructional format."); cf. Santiago v.

Fenton, 891 F.2d 373, 382 (1st Cir. 1989) ("Provision of only four hours of training, without

more, does not amount to a 'conscious' policy to train inadequately.").  For example, although

not recognizing the term "de-escalation tactic," one deposed officer explained that he follows a

"use of force continuum" in dealing with resistant prisoners, which is intended to ensure

compliance with the least amount of force necessary.  Pl.'s Facts, Ex. D Smolski Dep. 41:19-

42:13.

   Nascarella also bases his claim on Superintendent Marks' failure to review quarterly

reports from the Facility's Advisory Training Council.  See id. ¶ 79.  However, the record

establishes—and Nascarella does not dispute—that the Advisory Training Council meets and

makes available minutes of those meetings.  See Pl.'s Facts, Ex. X Ebacher Dep. 21:5-14 (stating

that a "training advisory board" meets quarterly with the Director of Training), id. Ex. BB

("Minutes from that meeting were available for review.").  Accordingly, Superintendent Marks'

failure to review the reports, without more, falls short of raising a reasonable inference that the

substance of the training at the Facility was constitutionally inadequate.  See Santiago, 891 F.2d

at 382 (finding that claimed deficiencies in the administration of a training program, without

---

[7] Insofar as Nascarella's expert claims that "[s]taff confusion regarding use of force concepts and
words would easily be discovered and addressed if anyone in the administration . . . was looking
at what was happening with use of force on the ground," see Pl.'s Facts Ex. H at 23, that
allegation relates to a lack of supervision post-training, not a training deficiency.

accompanying allegations that the training itself was inadequate or "inferior by standards of the profession," was insufficient to show liability).

Nascarella has failed to identify evidence giving rise to a reasonable inference that the substance of the training provided to correctional officers was constitutionally deficient. Neither Superintendent Marks' failure to review the Advisory Training Council reports or the difficulty correctional officers exhibited in describing use-of-force techniques appears "so likely to result in the violation of constitutional rights" as to show that supervisors were deliberately indifferent. See City of Canton, 489 U.S. at 390; Whitfield, 431 F.3d at 14. Accordingly, Nascarella's failure-to-train claim fails as a matter of law.

### b. *Failure to Supervise and Discipline*

According to Nascarella, Officer Mustone and Officer Marks' combined uses of force on forty-seven occasions in the two years preceding the incident would have put any attentive supervisor on notice that they were likely to use unecessary force against a prisoner in the future. See Pl.'s Facts ¶ 63, Ex. H at 24 (expert report finding that rate of force should cause "great alarm" to a supervisor). Moreover, Nascarella claims that the Facility was put on notice of Officer Mustone and Officer Marks' tendency to use excessive force by way of Morris' complaint, but failed to adequately investigate this allegation or take corrective action, instead summarily dismissing the complaint after a review of Morris' disciplinary record. See id. ¶¶ 66-69, 74, Ex. L.

A single incident of misconduct, even if egregious, is generally insufficient to find supervisors liable for their failure to supervise or discipline subordinates. See DiRico v. City of Quincy, 404 F.3d 464, 466, 469 (1st Cir. 2005) (holding that decision not to take disciplinary action after one complaint of excessive force did not amount to deliberate indifference); Febus-

Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 94 (1st Cir. 1994) (finding failure to sanction officer for five past complaints "did not show . . a grossly deficient complaint procedure"); cf. Kibbe v. City of Springfield, 777 F.2d 801, 809 n.7 (1st Cir. 1985) ("We are unconvinced that a failure to discipline [the defendant] or other officers amounts to the sort of ratification from which a jury properly could infer municipal policy.").

This would admittedly be a simpler case if the evidence showed forty-seven complaints of excessive force, rather than forty-seven use-of-force reports. However, the court must view the evidence in context. In cases involving claims of excessive force against police officers by civilians, the court would expect a greater rate of complaints—civilians may have better access to complaint procedures and may, in filing their complaints, operate beyond the control and oversight of the officers they allege used excessive force against them. That is not always the case within a correctional facility, where prisoners may be dissuaded from reporting such events by the knowledge that they remain under the care of the correctional officers about whom they would seek to complain.[8] In this context, and in the face of the use-of-force reports, the court cannot find that the absence of a pattern of excessive-force complaints is dispositive.

In addition to evidence that forty-seven combined uses of force over two years would cause "great alarm" on the part of an attentive supervisor, see id. ¶ 63, Ex. H at 24, Nascarella offers evidence that Superintendent Marks was cited for non-compliance by Department of Correction auditors for failing to ensure the completeness and accuracy of use-of-force packages. See Pl.'s Facts ¶¶ 108-09, Ex. AA. Finally, Nascarella has offered evidence that, despite being cited for non-compliance, and despite the high number of combined uses of force by Officer

---

[8] The court notes that in this case, Nascarella apparently waited until he was no longer incarcerated before bringing this action. Compl. ¶ 1 (stating that Nascarella is a former prisoner).

Marks and Officer Mustone, Superintendent Marks did not investigate the discrepancies in reporting by these officers when another prisoner alleged that they had kicked and punched him in the face. See id. ¶¶ 66-68, 71-73. Compare Ex. L at 7 (report by Officer Mustone that Morris sustained "a small cut over his left eye"), and id. at 9 (report by Officer Marks that makes no mention of resulting injuries), with id. at 10 (report by another correctional officer that Morris "received a laceration to the left check and multiple contusions" and "would have to be transported to an outside hospital for further treatment"); and id. at 15 (report by medical provider that Morris sustained "two lacerations over his left eye and a contusion to his right ear" and that a responding doctor ordered him "transported to Beverly Hospital for further evaluation"). The strength of this evidence may appropriately be weighed by a jury. The evidence suffices, however, to place in dispute the material fact of whether Superintendent Marks exhibited deliberate indifference to a recognizable pattern of the inappropriate uses of force that required investigation and correction through his failure to properly review use-of-force packages.

The First Circuit has previously found that the inference that a failure to discipline officers in the past would lead to the belief that they could escape discipline for future acts "simply too tenuous" to form the basis of a supervisory liability claim. Febus-Rodriguez, 14 F.3d at 94; see also Ramírez-Lluveras, 759 F.3d at 23 ("The plaintiff's argument also fails because it depends on the inference that insufficient sanctioning for past problems led Pagán to believe he could get away with more bad acts."). In both Febus-Rodriguez and Ramírez-Lluveras, however, the past, undisciplined acts were unrelated to the type of conduct at issue in those cases. See Febus-Rodriguez, 14 F.3d at 93-94 (finding the past complaints "completely unrelated to the present one"); Ramírez-Lluveras, 759 F.3d at 21 ("Only a single . . .

[undisciplined] item in Pagán's record . . . revealed any tendency of violence towards civilians."). In contrast, a jury could reasonably infer that Superintendent Marks' failure to ensure the accuracy of past use-of-force packages, and failure to identify the allegedly alarming rate of force used by Officer Mustone and Officer Marks, gave rise to a belief in Officer Mustone and Officer Marks that they could continue to use, and under-report, force against prisoners with impunity. The court finds that this conclusion requires less of an inferential leap than in Febus-Rodriguez and Ramírez-Lluveras.[9] Moreover, Nascarella's expert states that the failure "to track and analyze trends concerning use of force . . . predictably leads to a higher incidence of excessive use of force and creation of a culture of undetected criminal violations." Pl.'s Facts Ex. H at 31. This provides further support for Nascarella's claim of causation that may be appropriately weighed by a jury. See Voutour v. Vitale, 761 F.2d 812, 822 (1st Cir. 1985) ("[T]he affidavit of plaintiff's expert . . . stating . . . that the shooting of Voutour was a highly predictable result of the inadequate training . . . obviously provides additional support for causation.").

Accordingly, the court finds sufficient record evidence to create a triable issue as to whether Superintendent Marks was deliberately indifferent in his failure to supervise or discipline correctional officers, predictably leading to Officer Mustone and Officer Marks' use of force. See id. (reversing grant of summary judgment based on finding that causation, although a close question, could be reasonably inferred from the record evidence).

As to Sheriff Cousins, however, Nascarella has failed to present evidence that he "would have known[,] . . . but for his deliberate indifference or willful blindness," that Officer Mustone

---

[9] Lending further support to the reasonableness of this inference is record evidence showing that the use-of-force package related to the use of force against Nascarella underreported the type of force used, failed to include any report from Officer Marks, and reported injuries inconsistent with Nascarella's medical records. See Pl.'s Facts ¶¶ 116-121.

and Officer Marks posed a significant risk of harm and required supervision or discipline.  See

Maldonado-Denis, 23 F.3d at 582.  Although Sheriff Cousins has ultimate authority for the

Facility, § 1983 liability "cannot rest solely on a defendant's position of authority."  Ramírez-

Lluveras, 759 F.3d at 19 (citing Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 16 (1st Cir.

2011)).

The record does not establish that Sheriff Cousins has responsibility for reviewing use-of-

force reports at the Facility.  Accordingly, in the absence of a pattern of excessive-force

complaints or other evidence reasonably available to Sheriff Cousins that could have shown a

pattern of abuse or tendency towards unconstitutional behavior, no affirmative link can be drawn

between his actions and Officer Mustone and Officer Marks' use of force.  See Hegarty v.

Somerset Cnty., 53 F.3d 1367, 1380 (1st Cir. 1995) (finding no "affirmative link" between

supervisor's conduct and alleged violation).

Accordingly, summary judgment on Counts One and Two is GRANTED as pleaded

against Sheriff Cousins, but DENIED as pleaded against Superintendent Marks.

### 2. *Intentional Infliction of Emotional Distress*

Nascarella also pleaded Count Six, alleging intentional infliction of emotional distress,

against Superintendent Marks and Sheriff Cousins.  See Compl. ¶¶ 12, 81.  Although

Defendants' motion for summary judgment sought judgment on all claims against all

Defendants, see Defs.' Mot. Summ. J. [#54], however, their memorandum in support included no

briefing on the intentional infliction of emotional distress claim as pleaded against

Superintendent Marks and Sheriff Cousins.   See Defs.' Mem. Law Supp. Mot. Summ. J.

Pursuant Fed. R. Civ. P. 56(c), 11 [#55] [hereinafter Defs.' Mem.]   Accordingly, the motion for

summary judgment as to Nascarella's claim for intentional infliction of emotional distress

against Superintendent Marks and Sheriff Cousins is DENIED WITHOUT PREJUDICE.

C.       *Claim of Negligence Against the Commonwealth*

Count Three of Nascarella's complaint alleges negligence against the Commonwealth of Massachusetts pursuant to The Massachusetts Tort Claims Act.[10]  Defendants argue for summary judgment on the ground that the Commonwealth undertook no direct action that amounts to negligence.  Defendants' argument misconstrues the scope of liability under the Massachusetts Tort Claims Act, which states that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death *caused by the negligent or wrongful act or omission of any public employee* while acting within the scope of his office or employment."  Mass. Gen. Laws ch. 258, § 2 (emphasis added).

The more pertinent question is whether Officer Mustone and Officer Marks' actions fall into the Massachusetts Tort Claim Act's exception from liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting with the scope of his office or employment, whether or not the discretion involved is abused."  Id. § 10(c).  Two elements must be satisfied for an act to be considered "discretionary."  First, the actor must have had some discretion in whether or not to undertake the act.  Harry Stoller & Co. v. City of Lowell, 587 N.E.2d 780, 782 (Mass. 1992).  Second, the action must "represent planning and policymaking,'" rather than merely "the implementation and execution of . . . [a] governmental policy."  Id. at 783 (citing Whitney v. Worcester, 366 N.E.2d 1210, 1216 (Mass. 1977)); see also Horta v.

---

[10] A plaintiff must exhaust administrative remedies prior to filing suit under the Massachusetts Tort Claims Act.  See Mass. Gen. Laws ch. 258, § 4.  Defendants do not dispute that Nascarella met this exhaustion requirement.  Under the Massachusetts Tort Claims Act, the Commonwealth is exempt from liability for "[a]ny claim arising out of an intentional tort, including assault, battery, . . . [or] intentional mental distress."  Id. § 10(c).  Accordingly, Nascarella pleads Count Three in the alternative to his claims predicated on the intentionality of Officer Mustone and Officer Marks' acts.

<u>Sullivan</u>, 638 N.E.2d 33, 36 (Mass. 1994) ("The question whether a governmental actor's conduct involves discretion of the planning or policymaking type must be narrowly focused on the allegedly negligent conduct, not on whether the actor's conduct is part of some broader governmental policy.").

Here, Officer Mustone and Officer Marks' actions undoubtedly involved the use of discretion. However, nothing in the record suggests that they were acting in a planning or policymaking capacity. Rather, the choice to use force appears to have been "an *ad hoc* decision, based on the situation confronting [them] and . . . [having] no close nexus to policy making or planning." <u>Horta</u>, 638 N.E.2d at 37; <u>see also</u> <u>Harry Stoller & Co.</u>, 587 N.E.2d at 785. As such, section 10(c)'s exemption to liability in the case of discretionary acts does not preclude Nascarella's claim.

Accordingly, the court DENIES summary judgment as to Count Three.

IV.     <u>Conclusion</u>

As set forth above, Defendants' <u>Motion for Summary Judgment</u> [#54] is ALLOWED IN PART and DENIED IN PART as follows:

As to Counts One and Two, the court hereby ALLOWS Sheriff Cousins' motion for summary judgment, but DENIES Officer Mustone, Officer Marks, and Superintendent Marks' motion for summary judgment;

As to Count Three, the court DENIES the Commonwealth's motion for summary judgment;

As to Count Five, the court DENIES Officer Mustone and Officer Marks' motion for summary judgment;

As to Count Six, the court DENIES Officer Mustone and Officer Marks' motion for summary judgment and DENIES WITHOUT PREJUDICE Superintendent Marks and Sheriff Cousins' motion for summary judgment;

As to Count Seven, the court ALLOWS Officer Mustone and Officer Marks' motion for summary judgment.

It is further ordered that, pursuant to the court's partial denial of Count Six without prejudice, Defendants Superintendent Marks and Sheriff Cousins may file a supplemental motion and accompanying memorandum of law, not to exceed five pages, should they believe summary judgment is warranted as to Count Six based on Defendants' previously filed Rule 56.1 statement. Any such motion must include a certification pursuant to Local Rule 7.1(a)(2) and shall be filed no later than April 9, 2015. Plaintiff shall have fourteen days from the date of filing to submit an opposition to any such motion, also not to exceed five pages.

IT IS SO ORDERED.

March 27, 2015                                    /s/ Indira Talwani_____
                                                  United States District Judge